## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

1)  MAURICE BROWN, an individual;                     )
2)  KRISTY MILLER, an individual;                     )
3)  JOAN GUNTER, an individual;                       )
4)  DIANE CONKIN, an individual;                      )
5)  KELLY GOODEN, an individual; and                  )
6)  MORGAN SHIFFLETT, an individual,                  )
     Plaintiffs,                                     )
                                                     )
    vs.                                             ) **Case No.**
                                                     )
1)  CHEYENNE ARAPAHO TRIBES, OKLAHOMA;                )
2)  JANICE PRAIRIE CHIEF-BOSWELL;                     )
3)  GLORIA SMITH;                                     )
4)  SOUTHWEST CASINO AND HOTEL CORP.;                 )
5)  SOUTHWEST CASINO CORPORATION; and                 )
6)  PAYCHEX OF NEW YORK, LLC,                         )
     Defendants.                                     )

## COMPLAINT

1.      Plaintiffs allege that Defendants have violated the Fair Labor Standards Act

("FLSA"), the constitution of the Cheyenne Arapaho tribe, and the U.S. constitution.

Defendants treated Plaintiffs as hourly employees, by docking their pay if they worked

less than 40 hours per week, but Defendants failed to pay Plaintiffs' overtime if the

worked more than 8 hours per day or more than 40 hours per week.   The Cheyenne

Arapaho constitution guarantees all persons equal protection and guarantees due process

before employment can be terminated.   These protections were violated by Defendants

employment practices in creating a hostile work environment and in summarily

terminating Plaintiffs without any due process whatsoever.   Defendants also violated their

constitution and the constitution of the United States by implementing a four-tier preference program that improperly gave preferences to members of tribes other than the Cheyenne Arapaho tribe and also gave preferences to spouses of tribal members. For the foregoing violations, Plaintiffs seek reinstatement, back and front wages, the due process they were supposed to receive, and other compensation recoverable under the causes of action stated below.

## STATEMENT OF FACTS

2.   **Plaintiffs**.   The named plaintiffs were all formerly employed by the Defendants in miscellaneous capacities and have experienced improper treatment by Defendants in connection with their employment.   This improper treatment included refusal to pay them at all, much less to pay them overtime, for hours worked over 40 in a given week, and a pervasively hostile work environment regarding race and gender. Defendants violated the Cheyenne-Arapaho constitution by failing to provide Plaintiffs with equal protection and failing to give them due process upon termination of their employment.

3.   Maurice Brown resides in Watonga, Oklahoma located in Blaine County. He is a member of the Cheyenne Arapaho tribe, and his father is African-American. In 2006, Brown was hired as an operations manager for the Feather Warrior Casino in Watonga, Oklahoma ("FW-Watonga"). His pay rose from around $18.50 in May 2006 to $51.70 when he was fired on January 5, 2010. In mid-2008, Brown was named general manager of the FW-Watonga and FW-Canton. Mr. Brown was on-call 24 hours a day, 7

days a week, and he generally worked 12 hours per day. However, he was only paid for a maximum of eight hours per day. Further, if he worked less than 40 hours per week, his pay was docked. Upon the termination of Brown's employment the defendants failed to provide him equal protection or due process as required and provided in the Constitution of the Cheyenne Arapaho Tribes and prescribed by and/or outlined in the FW-Watonga and FW-Canton policies and procedures.

4.    Kristy Miller resides in Geary, Oklahoma which is located in Blaine County. She is non-native. Miller was hired on June 13, 2007 as a part of the drop-counting team at the FW-Watonga, then she was promoted to a series of positions and ultimately to an administrative assistant for the casino at FW-Canton. In her final position, six employees reported to her. Miller was paid $16 when she started and $23.50 per hour at her last position. She as on-call 24 hours a day, 7 days a week, generally working 10 to 12 hours per day, but she was only paid for a maximum of 8 hours per day. Her pay was docked for anything under 40 hours per week. She was effectively terminated on January 6, 2010, at which time, she was offered a demotion to a job with half the pay she had before that date. Defendants improved their offer of pay in the demoted job, but she could see the writing on the wall. She refused the demotion. Upon the termination of Miller's employment the defendants failed to provide her equal protection or due process as required and provided in the Constitution of the Cheyenne Arapaho Tribes and prescribed by and/or outlined in the FW-Watonga and FW-Canton policies and procedures.

5.     Joan Gunter resides in Longdale, Oklahoma which is located in Blaine County.  She is non-native.  Gunter was hired March 2008 as a security officer at the FW-Canton, and she ended up as operations manager at the newly-opened Feather Warrior Canton ("FW-Canton") reporting to Brown.  She started at $7.25 per hour, and her last pay rate was $17.85 per hour.  She typically worked nine hour days on weekdays plus a half-day on Saturday.  She was only paid for a maximum of 8 hours per day, and her pay docked for anything under 40 hours per week.  As Operations manager at FW-Canton she was on-call 24 hours a day, 7 days a week.  Gunter was terminated Jan. 6, 2010.  Upon the termination of Gunter's employment the defendants failed to provide her equal protection or due process as required and provided in the Constitution of the Cheyenne Arapaho Tribes and prescribed by and/or outlined in the FW-Watonga and FW-Canton policies and procedures.

6.     Diane Conkin resides in Thomas, Oklahoma which is located in Blaine County.  Conkin has Cheyenne ancestry, but her blood quantum is not sufficient to be an enrolled member of the tribe.  Conkin was hired March 7, 2008 as vault clerk for FW-Canton for three months at $7.25 per hour, and then was promoted to supervisor making $12.00 per hour.  After about one year, she was promoted to operations manager at FW-Canton making $18.00 per hour and by January 6, 2010 her pay had increased to $18.50 per hour.  As operations manager she was on-call 24 hours a day, seven days a week.  She typically worked 50-60 hours per week plus took calls from home and went in after hours if needed, but she was only paid for a maximum of 8 hours per day.  Her pay was

- 4 -

docked for anything under 40 hours per week.   Conkin was effectively terminated January 6, 2010 when she was offered a demotion to her original job working as a vault clerk for $11 per hour, but she rejected that because she was afraid of retaliation against her.  She did not want to be blamed if management decided that money was missing from the vault.  The stress of the oppressive environment at Defendants' casino coupled with being fired led to severe mental anguish for Conkin.   Upon the termination of Conkin's employment the defendants failed to provide her equal protection or due process as required and provided in the Constitution of the Cheyenne Arapaho Tribes and prescribed by and/or outlined in the FW-Watonga and FW-Canton policies and procedures.

　　　　7.　　　Kelly Gooden resides in Geary, Oklahoma which is located in Blaine County.  Gooden is non-tribal.  She was hired June 29, 2008 as deli manager at the FW-Canton for $17 per hour and then given a raise to $18.10 per hour.  She worked 10 hours per day Monday through Friday, then on weekends, on weekends she was required to work multiple shifts.  Nevertheless, she was only paid for a maximum of 8 hours per day.  Her pay was docked for anything under 40 hours per week.  She also was on-call 24 hours a day, seven days a week.  Like Miller, she was effectively terminated on January 6, 2010, at which time, she was offered a demotion to a job with about half the pay she had before that date.  Gooden too could see the writing on the wall, so she refused the demotion.   Upon the termination of Gooden's employment the defendants failed to provide her equal protection or due process as required and provided in the Constitution

of the Cheyenne Arapaho Tribes and prescribed by and/or outlined in the FW-Canton policies and procedures.

8.     Morgan Shifflett resides in Tulsa, Oklahoma, but at the times relevant to this complaint, she resided in Canton, Oklahoma which is located in Blaine County.  She was hired Feb. 24, 2008 as office assistant at the FW-Canton for $9.25 per hour.  She was put on a $13.50 per hour "salary" starting July 7, 2008 meaning no overtime – a maximum of 8 hours pay per day.  Her pay was docked for anything under 40 hours per week.  She was again promoted to Payroll and Insurance Manager.  Shifflett was constructively terminated on Feb. 15, 2010 stating that her constructive termination was "due to the evident racially discriminating structure...chaotic working conditions...," and complaints had not led to resolution of the issues.  At the time of her constructive termination, she was making $18.35 per hour.  Upon the constructive termination of Shifflettt's employment the defendants failed to provide her equal protection or due process as required and provided in the Constitution of the Cheyenne Arapaho Tribes and prescribed by and/or outlined in the FW-Watonga and FW-Canton policies and procedures.

9.     **Defendants**.  Defendants operate four casinos:  the Lucky Star Casino in Clinton ("LS-Clinton"), the Lucky Star Casino in Concho ("LS-Concho"), the FW-Watonga, and the FW-Canton.  Collectively, the four casinos will be referred to as the "CA Casinos."

10.     Cheyenne Arapaho Tribes, Oklahoma ("CATO") are a federally recognized Indian tribe.  They have their tribal headquarters at 100 Red Moon Circle; P.O. Box 38; Concho, Oklahoma 73022.  They have operations in or jurisdiction over parts of Blaine, Canadian, Custer, Dewey, Ellis, Kingfisher, Roger Mills, and Washita counties.  It has been estimated that CATO's financial impact in 2009 was more than $30 million in Oklahoma.

11.     The CATO's current governor is Janice Prairie Chief-Boswell ("Prairie Chief"), who was sworn in as governor Jan. 2, 2010.  Prairie Chief replaced Darrell Flyingman ("Flyingman").  Within days of her inauguration as chief, Prairie Chief fired dozens of employees, including the Plaintiffs, in an exercise one of the remaining managers, also named as a defendant herein, called "getting rid of the white bitches." Flyingman alleges that Prairie Chief placed unqualified tribal members in high positions and let qualified employees go with no legitimate reason or due process.  See Exhibit 1 at p.2 (Prairie Chief's June 23, 2010 letter to the editor).  In taking or directing the actions complained of herein, Prairie Chief acted outside her official capacity or beyond the scope of her authority.

12.     Gloria Smith is the general manager of the Feather Warrior Casinos, and she resides in Canton, Oklahoma which is located in Blaine County.  Smith came in to the casinos and made it clear that this was a tribal facility and there was no room for the "white" people.  At the time she fired many of the named plaintiffs, Smith admitted that gender and racial bias was a part of the basis on which the decision to fire them.  In

taking or directing the actions complained of herein, Smith acted outside her official capacity or beyond the scope of her authority.

13.     Southwest Casino and Hotel Corp. ("SCHC") and Southwest Casino Corporation ("SCC") are Minnesota corporations with offices at 17882 Bearpath Trail, Eden Prairie, Minnesota, 55347, and their agent listed by the Minnesota Secretary of State is Thomas E. Fox.  Upon information and belief, SCHC and SCC operate at least one of the CA Casinos.  See, e.g., their web site at http://www.swcasino.com/about.html (asserting that "In 1993, Southwest Casino and Hotel Corp. was the first company approved by the National Indian Gaming Commission (NIGC) as a management contractor in connection with our management contract with CATO for a gaming facility in Concho, Oklahoma.").  SCC owns U.S. TM Reg. No. 1,876,840 for LUCKY STAR. *See* Exhibit 2 (copy of status report from U.S. Patent and Trademark Office for this mark noting that the services with which the mark is used include operation of casinos for others).  Two of the CA Casinos still use the LUCKY STAR trademark.

14.     Paychex of New York, LLC has its primary offices at 911 Panorama Trail South, Rochester, New York ("Paychex").  It does business as PAYCHEX® (U.S. TM Reg. No. 1,121,151, *inter alia*), and it is a self-proclaimed leader in the payroll and human resource industry, serving over a half million businesses nationwide.  Paychex handles various administrative tasks for its clients including calculating payroll, filing tax payments to administering retirement plans and workers' compensation.  Payroll for the CA Casinos is handled by Paychex.  Paychex knows about the improper payment

practices complained of herein and, based upon its vast payroll experience, it knows those practices are illegal. Yet, Paychex has willingly implemented policies it knows to be improper and failed to pay Plaintiffs properly.

15.     Prairie Chief has stated that "[t]he Constitution is the supreme law of the land. Following it is our established tribal law." *See* Exhibit 1 (Prairie Chief's June 23, 2010 letter to the editor). CATO's constitution as a bill of rights in its first article. *See* Exhibit 3 (CATO constitution).[1]     Article I, section 1 (p.3) specifies that (emphasis added):

> **Tribes shall not make or enforce any law which:**
>      (f) **discharges a person from employment without due process**...;
>      (k) **denies to any person within its jurisdiction the equal protection**, application, or opportunity under the law or deprive any person of liberty or property without due process of law, provided, that the Legislature shall have the power to enact Indian preference laws;....[and]
>      (o) **discriminates against any Person based on** age, **gender**, religion, disability, **familial status**, sexual orientation, or social or economic status....[2]

---

[1] The current governor was an election board member when the current constitution passed on January 6, 2006, so she should be intimately familiar with its provisions. *See* Exhibit 3 at p.28 (certificate of results of election adopting the constitution with "Janice L. Boswell's signature as an election board member).

[2] Article I specifically allows for "Indian preference laws," and the anti-discrimination provision does not mention race as one of the protected classes as a logical result of allowing such Indian preferences. However, the behavior of Defendants' employees, diminutively referring to a tribal member and plaintiff Brown as a "black man" seems inconsistent both the promise of equal protection and the tenor of the anti-discrimination provisions of Article I. This sort of systematic denigration based on race and the gender discrimination typified by "white bitches" comments seem completely inconsistent with CATO's constitution.

For some reason, CATO removed reference to Article I from their web site. It was present on web site prior to September 2008. *See* Exhibit 4 (screen shot of web site prior to September 2008). Thereafter reference to Article I was removed. *See* Exhibit 5 (screen shot of CATO's current web site). It is unclear why reference to Article I was removed, but a logical inference is that the current government does not want the burden of complying with the due process, equal protection, and anti-discrimination provisions contained therein.

16.    Article X, section 3 of CATO's constitution states that "sovereign immunity shall not extend to Officials and Employees acting outside their official capacity or beyond the scope of their authority."

17.    CATO maintains an express hiring / firing preference system for employment with the tribe or tribal enterprises including, but not limited to, the CA Casinos. *See* e.g., Exhibit 6, CATO's Personnel Policies at Section 2.11 and Exhibit 7 (the Lucky Star Casino Personnel Policies and Procedures at chapter 3, section 1, entitled "Indian Preference"). The employment preference gives fist priority to enrolled CATO members, second to their spouses, third to enrolled members of other Indian tribes, and last priority to others.

18.    The Fair Labor Standards Act is codified at 29 USC §201 et seq. and regulations implementing it can be found at 29 CFR Parts 510 to 794 ("FLSA"). The FLSA generally provides that covered employees must be paid overtime for hours over 40 per week. Executive, administrative, professional, computer, and outside sales

employees may be exempt from the FLSA if they are paid on a "salary basis." *See, e.g.,* Exhibit 8 (U.S. Dep't of Labor Fact Sheet #17A). "Salary basis" means the following according to Exhibit 9 (U.S. Dep't of Labor Fact Sheet #17G):

> Being paid on a "salary basis" means an employee regularly receives a predetermined amount of compensation each pay period on a weekly, or less frequent, basis. **The predetermined amount cannot be reduced because of variations in the** quality or **quantity of the employee's work.** Subject to exceptions listed below, an exempt **employee must receive the full salary for any week in which the employee performs any work,** regardless of the number of days or hours worked. Exempt employees do not need to be paid for any workweek in which they perform no work. If the employer makes deductions from an employee's predetermined salary, i.e., because of the operating requirements of the business, that employee is not paid on a "salary basis." If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

19.    Tribes are not exempt from the FLSA.  Some federal statutes specifically exempt federally recognized tribes from their provisions. *See, e.g.,* 42 U.S.C. § 2000e-2(I), the "Indian Preferences exemption," to Title VII, which states that:

> Nothing contained in this subchapter [of Title VII] shall apply to any business or enterprise on or near an Indian reservation with respect to any publicly announced employment practice of such business or enterprise under which preferential treatment is given to any individual because he is an Indian living on or near a reservation.

Title VII thus specifically exempts certain types of tribal operations from its purview. Where tribes are not specifically exempted, the supremacy of federal law generally subjects them to federal statutory schemes except, in some cases, where the activities to be regulated by the statutory scheme are inextricably tied activities related directly to tribal self government.  The operation of a casino employing non-tribal employees and is

primarily visited by non-tribal persons is a purely economic venture, and such a venture is only loosely tied to tribal self government. Casinos provide money for the tribe, but they are not related to the operations of tribal self government. Therefore, general federal statutory schemes such as FLSA apply to tribal casinos unless their operation is expressly exempted as, for example, with Title VII.

20.    CATO tacitly admits that FLSA applies to it by using FLSA terms in its personnel policies. For example, CATO defines the term "exempt" on p.5 of Exhibit 6. It defines "non-exempt" on the following page. More specific admissions are made by CATO in Section 4.3, which starts on p.22 of Exhibit 6 (expressly referencing the Fair Labor Standards Act).

21.    An environment of racial and gender hostility exists at the CA Casinos. Offensive comments by management personnel at the CA Casinos such as "white people stink" or references to the female named Plaintiffs as "white bitches" were common. Derogatory comments about Plaintiff Brown's appearance, including but not limited to "why is a black man running the casino?", were also made by management personnel at CA Casinos and "why is a nigger running the casino" were also made to personnel working at the CA Casinos. Thus, Plaintiff Brown, despite being an enrolled CATO, was not deferentially treated as a CATO member, but rather was treated in a demeaning manner by CA Casinos management in connection with his race. The gender and racially derogatory comments about non-natives contributed to an exceptionally hostile work environment for the named Plaintiffs. They were not given the equal protection

demanded by CATO's constitution.  Rather, they were treated in a remarkably demeaning manner according to the worst sort of outdated racial and gender stereotypes.

22.     Defendant Prairie Chief cleaned house very quickly after her January 2, 2010 inauguration.  Just three business days after she became governor, Prairie Chief dictated the firing of Plaintiffs and others specifically because of their race and gender. In the words of one employee implementing the mass firings, they were "getting rid of the white bitches."  This policy was implemented in direct contravention of the tribal constitution's guarantees of equal protection to all persons, as well as, a violation of the guarantee of due process before any person's employment could be terminated.  There was no process at all granted to Plaintiffs.  They were summarily dismissed because they were in disfavored groups: "white bitches."

23.     Plaintiff Brown was in neither of the foregoing groups (women or whites), but he had refused to take action based on the prejudices of others in the administration of the CA Casinos who wanted to take punitive action against the female named plaintiffs based solely on the gender and/or racial biases of complaining parties.  Instead, Brown asked anyone who had a complaint to put it in writing stating the substantive (rather than prejudice-based) reasons for their complaint, and he would investigate.  Brown came to be identified with the "white bitches" he was perceived as protecting.  Add to that incendiary mixture the racial biases against him that were exemplified by the offensive inquiry as to why a "black man" (to wit, Plaintiff Brown) was in management at one of the CA Casinos.

24.    Flyingman has made allegations consistent with the allegations Plaintiffs make in the foregoing two paragraphs. *See* Exhibit 1 (Prairie Chief's letter to the editor):

> Darrell also alleges that…[governor Prairie Chief is] placing unqualified tribal members in high positions and letting qualified employees go with no legitimate reason or due process.

The foregoing allegations by Flyingman are consistent with the treatment Plaintiffs suffered.   However, the racial and gender stereotypes predated her administration. Unfortunately, an environment of racial and gender hostility has persisted in the CA Casinos for years.

25.    The CATO Constitution and the policies and procedures for the CA Casinos guarantee due process preceding termination of any employee.  However none of the Plaintiffs were afforded the guaranteed due process.

26.    Defendants "scraped" off Plaintiffs' work time hours to the extent they exceeded 40 hours per week.  That is, if Plaintiffs worked more than 40 hours in a given week, Plaintiffs received no pay for the hours in excess of 40.  However, Plaintiffs' pay was docked if they worked less than 40 hours in a given week.

## FIRST CAUSE OF ACTION
## <u>VIOLATION OF THE FLSA</u>

27.     Defendants asserted that Plaintiffs were "exempt" from the FLSA.  To be exempt under FLSA, employees must meet both the duties test and the salary test. Under the duties test, the employee must satisfy specific requirements spelled out under FLSA regulations.  To meet the salary test, employees must receive a predetermined salary amount each pay period. That amount cannot be subject to reduction because of the quantity or quality of work performed. Thus the employee must receive the full salary for any week in which the employee performs any work.

28.     However, when Plaintiffs worked less than 40 hours per week, their pay was docked.  This practice is inconsistent with Plaintiffs being properly characterized as "exempt" employees.  Plaintiffs were not exempt.  As noted in Exhibit 9 (U.S. Dep't of Labor Fact Sheet #17G), an exempt employee "receives a predetermined amount of compensation each pay period…. The predetermined amount cannot be reduced because of variations in the…quantity of the employee's work."  Plaintiffs should have been paid for overtime since they were not being paid on a "salary basis" under the FLSA.

29.     "Any employer who violates the provisions of section 206 or section 207 of this title [of the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 USCA

§216(b). Plaintiffs seek under this provision to recover unpaid overtime compensation and an additional equal amount as liquidated damages.

30. The Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 USCA §216(b). Plaintiffs seek recovery of their attorney fees and costs under this provision.

31. "No employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 USCA §216(b). By their signatures at the end of this Complaint, the Plaintiffs give their consent consistent with this FLSA requirement.

**SECOND CAUSE OF ACTION**

<u>**VIOLATION OF THE CHEYENNE-ARAPAHO CONSTITUTION**</u>

32.     The existence of the pervasive hostile work environment at the CA Casinos regarding racial and gender-based stereotypes and insults violates the CATO's constitutional guarantee of equal protection.  No provision is made in the constitution that would justify or allow any type of discrimination based on gender.  Quite the contrary, the constitution at Article I, section 1(o) forbids discrimination "against any person based gender."  While the constitution allows for creation of Indian preferences, it does not condone racial and gender stereotyping of the sort to which Plaintiffs were subjected.

33.     Defendants denied Plaintiffs' right to due process under the CATO constitution when they summarily fired them.  Article I, section 1(f) forbids the tribe from discharging any person from employment without due process.  Plaintiffs experienced summary firing without any process at all.  Defendant Prairie Chief was inaugurated January 2, 2010, and her program of discharging Plaintiffs and other non-tribal persons was carried out just three business days later.  Plaintiffs learned of their discharge at the same time it was carried out.  There was no notice and opportunity to respond, nor was there an opportunity for their terminations to be separately reviewed, both are the essence of due process.

34.     CATO's tribal court has recently held that a similar termination violated the tribe's constitution.  *See* Exhibit 10, hand-written tribal court order dated August 25, 2010 and associated case pleadings from the case of George Old Crow.  The tribal court,

in addressing similar charges in the referenced case found that due process must precede any termination in employment. The tribal court entered a temporary injunction voiding the effect of Old Crow's firing. His firing occurred on January 2, 2010 in the same wave of firings that affected the named Plaintiffs herein.

35.     Plaintiffs thus seek a declaration that the pervasively hostile work environment at the CA Casinos violates the CATO constitutional guarantee of equal protection and its prohibition against discrimination. Plaintiffs also seek a declaration that their summary termination without any due process violates the constitution's promise of due process before employment can be terminated.

36.     Plaintiffs seek damages associated with the above-noted improper conduct by Defendants. Specifically, Plaintiffs seek their lost wages as a result of their improper termination by Defendants.

37.     Consistent with the recent ruling in CATO tribal court, Plaintiffs also seek a temporary injunction reinstating Plaintiffs' employment. *See* Exhibit 10 regarding issuance of a temporary injunction in George Old Crow's case under similar circumstances. A permanent injunction will ultimately be sought asking the Court to bar Defendants from discharging Plaintiffs without affording them due process.

## THIRD CAUSE OF ACTION
## <u>INVALIDITY OF THE FOUR-TIER PREFERENCE PROGRAM</u>

38.     Defendants have instituted a four-tier preference program.  *See, e.g.,* Exhibit 7 (the Lucky Star Casino Personnel Policies and Procedures at chapter 3, section 1, entitled "Indian Preference").  The employment preference gives first priority to enrolled CATO members, second to their spouses, third to other Indian Tribes, and last priority to all others.  This preference is employed not only in hiring, but also in firing. Thus, Plaintiffs were preferentially selected to be terminated based on the fact that they were (with the exception of Plaintiff Brown, who is a member of CATO) members of the lowest priority group.  However, it appears that Plaintiff Brown was regarded as a black man by Defendants, and not accorded proper preference as a tribal member.

39.     Federal law allows recognized tribes to institute policies preferring their own members, but there is no allowance under federal law for preference programs where a tribe gives preference to spouses of tribal members just because of their marital status. Such a preference is invalid under federal law and also is in direct violation of article I, section 1(o) of the CATO constitution which prohibits discrimination based on "familial status."  Also preferences may not be given to members of other Indian tribes, thus discriminating against other races, and to the extent that Defendants' policy does that, it is invalid.

40.     Plaintiffs ask the Court to declare that the second (spouses of CATO members) and third (other Indian) preference categories violate the federal, CATO and

Oklahoma constitutions. These preferences improperly deny equal protection to citizens of the United States, and they are not the sort of tribal preference programs that have been allowed previously by federal law.

## CLASS ALLEGATIONS

41.    Plaintiffs are representative of Defendants' former employees also subject to the same wrongful practices.

42.    Plaintiffs' claims are typical of the claims of Defendants' former employees.

43.    Plaintiffs' will adequately represent the interests of Defendants' former or current employees if they are allowed to represent them in a class context, and their chosen counsel have the experience and expertise to ably represent the class.

44.    It would be impracticable to join all of the former employees subjected to Defendants' improper practices in a single action.

45.    Certification is proper under any of the three 23(b) categories as both damages and injunctive relief are requested.    Under 23(b)(3), class litigation is manageable and is preferable to individualized litigation of class claims.

46.        Plaintiffs ask that the Court certify a class of former employees who were treated as though they were exempt from FLSA standards but who were actually in a category of employees whose pay was docked if they worked less than 40 hours. The class period will be coextensive with the statute of limitations on FLSA claims before the filing of this action.

## REVIEW AND APPROVAL BY PLAINTIFFS

47.   "No employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 USCA §216(b).  By their signatures at the end of this Complaint, the Plaintiffs give their consent consistent with this FLSA requirement.   The Plaintiffs specifically approve the filing of this action on their behalf after review of this Complaint as indicated by their signatures on the lines provided below:

_____
MAURICE BROWN

_____
JOAN GUNTER-BROOKS

_____
KELLY GOODEN

_____
KRISTY MILLER

_____
DIANE CONKIN

_____
MORGAN SHIFFLETT

Respectfully submitted,


/s/ Edward L. White
Edward L. White, OBA #16549
Edward L. White, P.C.
9301 Cedar Lake Ave., Suite 200
Oklahoma City, Oklahoma 73114
Telephone:  405-810-8188
Facsimile:  405-608-0971
Email:  ed@edwhitelaw.com

-and-

Jacque Pearsall, OBA # 18317
Jacque Pearsall, P.L.L.C.
6303 N. Portland Ave., Suite 300
Oklahoma City, Oklahoma 73112
Telephone:  405-606-8464
Facsimile:  405-942-2661
Email:  jacquepearsall@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

**ATTORNEY LIEN CLAIMED**

**JURY TRIAL DEMANDED**